## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ALBERTO RIVERA; MARCO GINORIO MARTINEZ; G.G.R. PETROLEUM CORP.; and ALFONSO GÓMEZ,** | **Civil No. _____** |
| Plaintiffs, | |
| v. | **Product Liability for Damages** |
| | **Plaintiffs Request Jury Trial** |
| **FOUNTAIN POWERBOAT INDUSTRIES INC.; FOUNTAIN POWERBOATS INC.; INSURANCE COMPANY X; INSURANCE COMPANY Y,** | |
| Defendants. | |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs Alberto Rivera, Marco Ginorio Martínez, G.G.R. Petroleum Corp., and Alfonso Gómez, through the undersigned counsel, and respectfully state, allege and pray:

### I.     NATURE OF THE ACTION

1.      This is a products liability action against the manufacturer of the Fountain 43NX vessel purchased by G.G.R. Petroleum Corp. and its owners Plaintiffs Alberto Rivera and Marco Ginorio Martínez for manufacturing defects responsible for the events and damages claimed herein.  Plaintiffs request redress for the physical, emotional, and economic injuries and damages sustained by them as a result of said defects, including a maritime accident in which Plaintiff Alfonso Gómez's hand was injured and all Plaintiffs feared for their life as the vessel in which they were navigating took on water.  Plaintiffs allege that, as a result thereof, Defendants are jointly

and severally liable under maritime law, and, suppletorily, under Articles 1536, 1542, and 1543 of the Puerto Rico Civil Code.

2.     The damages were caused by one or both of the defendants when the aforementioned Fountain 43NX vessel began experiencing discoloration in various areas of the interior walls, floors, and cushions, as well rapidly deteriorating cracks on the transom area, side door floor line and wall—which caused water to enter into the boat—among other problems throughout the boat, including an unbolted T-Top, all due to the defective manufacture of the vessel.  Furthermore, due to Defendants' manufacturing defects, while riding the vessel, Plaintiff Alfonso Gómez's hand was fractured by a sudden movement of the T-Top and, en route to St. Thomas, the vessel's side door opened and the top and bottom area of the hull near the door cracked, causing the interior of the boat to flood, putting the lives of Plaintiffs and their passengers in peril and causing them severe emotional distress and suffering.  Plaintiffs notified defendants of the above and made a claim on August 27, 2020.  After receiving said claim Defendants committed to repair the manufacturing defects in the vessel within two months.  However, after myriad excuses and delays, the vessel finally arrived in Puerto Rico on March 31, 2021.  After three trips—two sea trials on April 1 and 3 and a pleasure trip with family on April 4, 2021— Plaintiffs took the vessel out of its water dock in Puerto del Rey Marina and noticed a significant hull crack below the water level and under the front anchor.  Defendants were immediately notified.  In addition to the above, Plaintiffs incurred significant expenses related to the purchase and delivery of the vessel, as well as improvements and repairs to the same, yet it has been unusable for most of its lifetime; not to mention that the vessel was delivered without a radar, antenna, GPS cards/navigation maps, and no bolts for its T-Top reinforcement.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332, inasmuch as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the jurisdictional threshold of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.  The Court also has subject matter jurisdiction over this admiralty and maritime case pursuant to 28 U.S.C. § 1333 as it involves the malfunction of a vessel and injuries on board the vessel while cruising on navigable waters.  See Kunkel v. Motor Sport, Inc., 349 F. Supp. 2d 198, 205 (D.P.R. 2004) (citing Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996)).  The case is therefore governed by federal maritime law, but state law may supplement damages.  See id.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events that gave rise to this case occurred within the District of Puerto Rico and the vessel involved in this action is situated within the District of Puerto Rico.

## III.     PARTIES

5.     Plaintiff Alberto Rivera ("Mr. Rivera") is of legal age, married, and a citizen of San Juan, Puerto Rico.  Mr. Rivera is suffering emotional and economic damages alleged herein and for which compensation is sought.

6.     Plaintiff Marco Ginorio Martínez ("Mr. Ginorio") is of legal age, married, and a citizen of San Juan, Puerto Rico.  Mr. Ginorio is suffering emotional and economic damages alleged herein and for which compensation is sought.

7.     Mr. Rivera and Mr. Ginorio are the owners of and do business through G.G.R. Petroleum Corp.  The vessel at issue in this action—a 2020 Fountain 43NX—was manufactured by the defendants and was sold to G.G.R. Petroleum Corp.

3

8.     G.G.R. Petroleum Corp. is a corporation organized under the laws of the Commonwealth of Puerto Rico with its principal place of business in Bayamón, Puerto Rico.

9.     Plaintiff Alfonso Gómez ("Mr. Gómez") is of legal age, married, and a citizen of Miami, Florida.  Mr. Gómez suffered physical, emotional, and economic damages alleged herein and for which compensation is sought.

10.    Defendant Fountain Powerboat Industries Inc. is a corporation organized in a state other than the Commonwealth of Puerto Rico and the State of Florida, with principal place of business in the State of North Carolina at 1653 Whichard's Beach Road, Washington, N.C. 27889. Upon information and belief, Fountain Powerboat Industries Inc., through a subsidiary, designed and manufactured the vessel at issue described herein.

11.    Defendant Fountain Powerboats Inc. is a corporation organized in a state other than the Commonwealth of Puerto Rico and the State of Florida, with principal place of business in the State of North Carolina at 1653 Whichard's Beach Road, Washington, N.C. 27889.  Fountain Powerboats Inc. is the manufacturer of the vessel at issue described herein.

12.    Insurance Company X and Insurance Company Y are unknown insurance companies authorized to do business under the laws of a state other than the Commonwealth of Puerto Rico and the State of Florida, with principal place of business in a state other than the Commonwealth of Puerto Rico and the State of Florida.  These companies are the insurers of one or more of the Defendants and, together with them, are jointly and severally liable to the Plaintiffs for the damages caused by their respective insured.

13.    The Defendants described in paragraphs 10 through 12 are jointly referred to as the "Defendants."

4

## IV.    <u>FACTUAL ALLEGATIONS</u>

14.    On or around January 8, 2020, Mr. Rivera and Mr. Ginorio had G.G.R. Petroleum Corp. purchase a 2020 Fountain 43NX powerboat manufactured by Defendants from Iconic Marine Group, LLC for a purchase price of $624,048 (hereinafter referred to as the "Boat").

15.    On or around March 11, 2020, Mr. Rivera and Mr. Ginorio received the Boat in Puerto Rico on behalf of G.G.R. Petroleum Corp., which Boat was wrapped in the same manner in which it left the factory located in North Carolina.

16.    After the Boat was delivered, Plaintiffs took out the Boat on or around March 12, 2020.

17.    While navigating, Plaintiffs noticed water entering and splashing inside the vessel through the side door, although they did not find it excessively alarming.

18.    After the test run, the Boat was taken out of the water, placed on the trailer in which it was shipped, cleaned, and parked in the boatyard of the Puerto del Rey Marina in Fajardo, Puerto Rico.

19.    On or around March 15, 2020, pursuant to the relevant executive order issued by the Governor of Puerto Rico due to the COVID-19 emergency, marinas were put on lockdown and owners were not allowed access to use their boats.

20.    Plaintiffs did not use the Boat until around May 15, 2020, when restrictions on marinas and boating were partially eased.  At that time, Plaintiffs entered the boatyard and, despite having a brand new, barely used boat, upon seeing the Boat, they noticed discoloration of the interior walls and floors.  Specifically, the white gel coat had decolorated and turned yellow in different areas of the walls and floors.  Plaintiffs also noticed discoloration of the red Fountain

logo on the seat cushions.  Plaintiffs documented this with pictures and videos and immediately notified it to Iconic Marine Group, LLC.

21.     On or around May 31, 2020, when Plaintiffs used the Boat, they noticed, among other defects, large cracks on the transom area of the Boat, as well as small cracks on the side door floor line.

22.     Plaintiffs also noticed that the mirror in the bathroom had fallen due to its poor installation.

23.     Due to inadequate stitching and poor installation, the bow area seat cushions had started to fall out of place.

24.     The discoloration of the interior of the Boat had expanded even further.

25.     Plaintiffs also felt a vibration on the starboard side area, although they did not consider it to be too alarming.  Vibrations of the T-Top were also noticed.

26.     The water entering and splashing through the side door into the vessel continued.

27.     Plaintiffs also noticed that the Boat's power generator was not generating power adequately, which limited their use of the galley.

28.     Plaintiffs noticed that the electrical panel of the boat was unbolted due to poor installation.

29.     Plaintiffs documented the above-mentioned defects with pictures and contacted Iconic Marine Group, LLC again.  Defendants told Plaintiffs to continue to use the Boat.

30.     Additionally, Plaintiffs identified the following problems and defects: rusting of screws, falling of screws, the raw water pump was not working, an inadequate connection of the toilet to the sewer tank, rusting of the refrigerator doors, and cushion deterioration.

31.     Within the next 30 days, through on or around June 30, 2020, Plaintiffs noticed that the cracks on the transom area of the Boat had expanded and extended both in width and length, and the cracks on the side door floor line were extending to the walls.

32.     Moreover, the vibrations on the starboard side and of the T-Top had escalated.

33.     Similarly, the volume of the water entering and splashing through the side door into the vessel had also increased.

34.     Once again, Plaintiffs documented the above with pictures and communicated with Iconic Marine Group, LLC.

35.     At all times during the various conversations with Iconic Marine Group, LLC regarding the defects, including the cracks, the Iconic marine Group, LLC representative told Plaintiffs that they could keep using the Boat.

36.     During the following 30 days, through on or around July 31, 2020, the expansion and extension of both the width and length of the cracks on the transom area became so significant that they turned into a safety threat.  As a result, the Boat started to collect water that entered through the cracks.

37.     Similarly, the cracks on the side door floor line continued extending to the walls and expanding.  The water volume entering and splashing through the side door had increased to such a level that passengers were not able to use the starboard side back seat while boating.

38.     Plaintiffs had to resort to sealing the cracks with epoxy to prevent water from entering the hull.

39.     At that time, the vibrations felt on the starboard side and the T-Top continued escalating to a point of concern.

40.     While attempting to figure out the reason for the vibrations of the T-Top, Plaintiffs noticed that the T-Top screws had never been bolted to the Boat's hull.

41.     Plaintiffs installed bolts to the screws in an effort to affix the T-Top and reduce its vibration.

42.     Nevertheless, while boating, Mr. Gómez was holding on from the T-Top pole when the top, with a sudden, unexpected back movement fell out of place/folded and pinched his hand between the console and T-Top pole.

43.     As a direct consequence, Mr. Gómez suffered a hand fracture.  This caused him to incur in medical expenses.

44.     Furthermore, while Plaintiffs were cruising to St. Thomas from Fajardo, Puerto Rico, the Boat's side door opened, which caused water to rapidly rush inside the vessel, flooding the Boat and putting it and the crew in danger.

45.     With much effort, Plaintiffs were able to secure the side door and pump the water out of the Boat so they could continue to the safety of port.

46.     As a result of this incident, Plaintiffs suffered severe emotional distress, as they believed the Boat was going to flood.

47.     Upon their arrival to St. Thomas, Plaintiffs inspected the side door and noticed that the side door cracks had significantly expanded to the outside area of the hull, reaching both the top and bottom areas.

48.     Plaintiffs deemed the Boat too much of a safety threat to continue using.

49.     Despite having planned to use their brand-new Boat all summer and sending it back to the factory in North Carolina due to its defects after Labor Day, Plaintiffs had to send it back to the factory in North Carolina as soon as possible, before the planned date.

50.     On or around August 27, 2020, Mr. Rivera sent Chuck Arnold of Iconic Marine Group, LLC, a claim letter related to the manufacturing defects of the Boat, which have been included in the allegations above.

51.     It was not until after the incident on the way to St. Thomas that Iconic Marine Group, LLC's representative told Plaintiffs to discontinue use of the Boat and send it to the factory right away.

52.     The Boat spent approximately seven months in the factory in North Carolina for repairs related to the defects outlined in the August 27, 2020 letter, despite the original timeline given to Mr. Rivera and Mr. Ginorio of two months.

53.     The Boat finally arrived at the San Juan Port on or around March 31, 2021, when it was taken in its trailer to Puerto del Rey Marina.

54.     The Boat was placed on water on April 1, 2021.  A sea trial was done on April 1 and April 3, 2021.

55.     On April 4, 2021, the Boat was used with Mr. Ginorio's family.

56.     Between April 1 and April 4, 2021, the Boat was left on a water dock.

57.     The Boat was taken out of the water on April 5, 2021.  At that time, a significant crack was noticed on the hull under the water level.  Another crack below the front anchor was also observed.

58.     Moreover, the T-Top was once again unbolted.

59.     To make things worse, the Boat was sent to Puerto Rico without its radar, antenna, and GPS cards/navigation maps.

60.     Due to these defects and damages, identified less than a week after the Boat's arrival from the factory, and after seven months of supposed repairs, the Boat was deemed unusable and unsafe.

61.     In addition to Mr. Gómez suffering physical damages as a result of the T-Top fracturing his hand, estimated at $150,000, and Plaintiffs suffering severe emotional distress and anguish as a result of the trauma of almost capsizing and fearing they would drown, estimated at $400,000 each, Plaintiffs, as a result of Defendant's manufacturing defects, have also had to incur excessive and otherwise unnecessary expenses and suffered the following damages, without limitations:

    a.   Loss of value of the Boat, estimated to exceed $750,000;

    b.   Approximately $20,000 in shipping costs to get the Boat to and from North Carolina for repairs;

    c.   $23,927 in trailer costs;

    d.   $10,000 in insurance expenses;

    e.   $15,000 in emergency repairs to stabilize the Boat;

    f.   $5,000 to pay for surveyors;

    g.   $10,000 in docking expenses while the Boat was damaged and during repair at the factory;

    h.   $5,000 in expenses to travel to North Carolina for inspections.

62.     Plaintiffs' enjoyment of the Boat has been and continues to be seriously impaired because of Defendant's manufacturing defects.  Moreover, given that the repairs undertaken were either a sham or completely incompetent, the Boat has no value.

## V.   FIRST CAUSE OF ACTION

### (Strict Products Liability: Manufacturing Defect)

63.     Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

64.     Plaintiffs are in the class of persons that Defendants should reasonably foresee as being subject to the harm caused by defectively fabricated Fountain powerboats, specifically, the 43NX, as Plaintiffs are the types of persons by whom the Fountain 43NX was intended to be used.

65.     Defendants designed, manufactured, marketed, promoted, sold, and/or distributed the defective vessel (the Boat) that caused the incidents described above and Plaintiffs' resulting damages.  The Boat is defective in that some of its most integral parts are prone to cracking, thereby letting water flood the inside of the vessel and putting the safety of the Boat and its passengers at risk.  Other defects of the Boat include: discoloration of the interior walls and floors; discoloration of the red Fountain logo on the seat cushions; a fallen bathroom mirror; inadequate stitching and installation of the bow area seat cushions, which started to fall out of place; unusual vibrations on the starboard side; unusual vibrations and dangerous movements of the T-Top; unbolted T-Top; power generator that did not generate power adequately; opening of the side door while boating; rusting and falling of screws; nonfunctional raw water pump; inadequate connection of the toilet to the sewer tank; unbolted electrical panel; rusting refrigerator doors, and cushion deterioration. Such defects caused Mr. Gómez's hand fracture and the incident in which the Boat flooded with saltwater while cruising en route to St. Thomas, almost causing the Boat to capsize with its passengers.

66.     At all times relevant hereto, Defendants designed, manufactured, marketed, promoted, sold, distributed, and/or supplied vessels similar to the Boat for ultimate sale to end

users or through the services of a distributor.  Defendants designed, manufactured, marketed, promoted, sold, distributed, and/or supplied the Boat with its components knowing that it would be thereby sold or provided to end users.

67.     Defendants' vessel and its components was expected to and did reach end users, such as Plaintiffs, without substantial change in its condition as manufactured by Defendants. Indeed, the Boat arrived in Puerto Rico wrapped in the same manner as it had left the factory in North Carolina.

68.     In light of the defects described herein, at the time the Boat reached G.G.R. Petroleum Corp., through Mr. Rivera and Mr. Ginorio, it was in an unreasonably dangerous condition not contemplated by any reasonable person among the expected users using the vessel for its intended use and in its intended environment.

69.     The Boat supplied to Plaintiffs was defective in its manufacture and/or fabrication and unreasonably dangerous when it left Defendants' hands and it reached the user and consumer. Defendants therefore placed the Boat in the stream of commerce in a defective and unreasonably dangerous condition.

70.     The Boat, designed, manufactured, marketed, promoted, sold, distributed, and/or supplied by Defendants to be ultimately used by Plaintiffs was in a defective condition unreasonably dangerous to any user or consumer due to the Boat's structure's ability to easily crack while at rest and while boating and those cracks' tendency to rapidly and dangerously expand in width and length to the point of allowing water to flood the vessel and the side door to open, causing a rapid flood of seawater into the vessel.  The Boat was similarly in a defective condition unreasonably dangerous to any user or consumer due to the T-Top not being secured and bolted to the hull, causing vibrations from the T-Top as well as dangerous, sudden movements of top, among

other defects.  Plaintiffs are among those that Defendants should have reasonably foreseen as being subject to the harm caused by the defective conditions.

71.     Upon information and belief, the Boat's expedited manufacturing so that it could be exhibited at the Caribbean Boat Show instigated the array of defects and lack of quality controls, which caused the Boat to deviate in quality and other standards as compared to other identical units.  As a clear example of this, as opposed to other properly manufactured, fabricated, and distributed Fountain 43NX vessels, the vessel at issue in this action exhibited cracks after minimal use and water flooded and splashed the interior through the side door to the point of preventing passengers from using seats near the door.  Furthermore, even after a seven-month repair job, the Boat again exhibited cracks after minimal use.

72.     Defendants knew or should have known of the unreasonable risk posed by their vessel resulting from the failure to properly manufacture it and repair it.

73.     Plaintiffs used the Boat in the manner in which it was intended to be used by Defendants.  Nevertheless, this resulted in injuries and damages to the Plaintiffs.

74.     When Plaintiffs received the Boat, they were unaware of the defective nature of Defendant's vessel, and could not have known that Defendants designed, manufactured or assembled the vessel in a manner that would increase the risk of bodily injury to persons such as Plaintiffs.

75.     As a direct and proximate result of Defendants' manufacture, fabrication, assembly, marketing, promotion, supply, and/or distribution of the Boat, Plaintiffs have sustained and will continue to sustain severe emotional distress, economic losses and consequential damages, and Mr. Gómez also sustained physical injuries to his left hand, and they are therefore entitled to

compensatory relief and to a declaratory judgment that Defendants are liable to them for breach of their duty to Plaintiffs and Defendants' failure to provide a safe and effective product.

76.     Defendants' vessel constitutes a product unreasonably dangerous for its reasonably intended use due to its defective manufacture, fabrication, and assembly.  Defendants are therefore jointly and severally liable to Plaintiffs in an amount of $2,189,000 in compensatory damages, plus interest, costs, and attorneys' fees.

77.     Pursuant to maritime law and the laws of the Commonwealth of Puerto Rico, as joint tortfeasors, Defendants, together with their insurers, must be held jointly and severally liable for all of the damages alleged in this Complaint.  Defendants' acts or omissions described above constitute a tort under maritime law or Puerto Rico Civil Code Articles 1536, 1542, and 1543.

## VI.    <u>DAMAGES</u>

78.     Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

79.     The injuries suffered by Plaintiffs, including but not limited to bodily and physical injury, mental anguish, emotional distress, incurring excessive and otherwise unnecessary expenses, deprivation of enjoyment of the Boat, among others, are the direct consequences of Defendants' conduct and are conservatively estimated as follows:

      a.   G.G.R. Petroleum Corp. – an amount in excess of $839,000;

      b.   Mr. Rivera – an amount in excess of $400,000;

      c.   Mr. Ginorio – an amount in excess of $400,000;

      d.   Mr. Gómez – an amount in excess of $550,000.

### VII.   PREJUDGMENT INTEREST, ATTORNEYS' FEES AND COSTS

80.   Plaintiffs repeat and reallege each allegation in the preceding paragraphs as if fully set forth herein.

81.   In the event that Defendants deny their liability in the occurrence of the events or damages caused to Plaintiffs, Plaintiffs are entitled to pre- and post-judgment interest to be computed over the amount recovered through this Complaint, as well as a reasonable amount of attorneys' fees, as permitted by applicable law.

### VIII.   TRIAL BY JURY

82.   Plaintiffs request that the instant action be tried before a jury.

### IX.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

a.   Issue a judgment against Defendants declaring that they are jointly and severally liable for the damages sustained by Plaintiffs due to Defendants' breach of duty to Plaintiffs and failure to provide a safe and non-defective product;

b.   In the judgment to be issued, grant Plaintiffs the compensatory damages alleged above, totaling $2,189,000;

c.   In the judgment to be issued, impose on Defendants payment in favor of Plaintiffs of the costs, expenses, and attorneys' fees incurred during these proceedings;

d.   Grant any other relief allowed in law that the Court might deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 13th day of April 2021.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, P.R. 00918

Tel. 787-274-1212
Fax 787-274-1470


s/ *NÉSTOR MÉNDEZ GÓMEZ*
Néstor M. Méndez-Gómez
USDC-PR Bar No. 118409
nmendez@pmalaw.com

s/ *MARÍA ELENA MARTÍNEZ CASADO*
María Elena Martínez Casado
USDC-PR Bar No. 305309
mmartinez@pmalaw.com

16